PELEG B. CLARK *vs.* WARNER E. HALE.

A second mortgagee of personal property, by consenting to a sale thereof by the mort-
gagor discharged of his mortgage, does not warrant the purchaser's title, or estop him-
self to set up against him a title under a subsequent assignment of the first mortgage.

ACTION OF TORT for the conversion of a hack. The answer
denied the plaintiff's title and the conversion.

At the trial in the superior court of Suffolk, before *Abbott,* J.,
the plaintiff gave in evidence a mortgage of the hack and other
property, made in May 1853 by Bricket, Faxon & Munroe to
Mathes & Snow, and by them assigned to the plaintiff in Au-
gust 1854; and a second mortgage of the same property from
the same mortgagors to the plaintiff in July 1853, subject to the
first mortgage. It was admitted that the amount due on each
mortgage exceeded the value of the hack, and there was evi-
dence tending to prove a conversion by the defendant.

The defendant introduced evidence tending to show that
after the execution of both mortgages the plaintiff authorized
the mortgagors to sell any of the mortgaged property, and they
made several sales under this authority, and in March 1854 sold
the hack to one Cheney, and that the plaintiff afterwards au-
thorized and directed Cheney to " trade off or sell " the hack,
and Cheney, in July 1854, pursuant to this authority, exchanged
it with the defendant for its full value, without giving the de-
fendant notice of the existence of either of the mortgages.

The defendant asked the court to instruct the jury, that if the
plaintiff authorized and directed Cheney to trade off or sell the
hack, and Cheney, having it in his possession, did, under this
authority, exchange it with the defendant in good faith for its
fair value, without giving the defendant notice of the existence
of either mortgage, the plaintiff would be estopped to set up
against the defendant a title in himself under either mortgage.

But the court instructed the jury, that if they were satisfied
that the plaintiff, after the execution and delivery of the second
mortgage to him, authorized the mortgagors and Cheney to sell

the hack discharged of that mortgage, and that Cheney sold it under that authority; yet if a valid mortgage of the hack to Mathes & Snow was then in existence, and was afterwards assigned to the plaintiff, the plaintiff, after a demand and refusal, could claim and hold the property under that mortgage, and recover its value in this action to the extent of the debt due under that mortgage. The jury found a verdict for the plaintiff, and the defendant alleged exceptions.

*I. W. Richardson*, for the defendant. In all cases of the sale of a chattel, of which the vendor is in possession at the time of the sale, there is an implied warranty of title. 2 Kent Com. (6th ed.) 478, 479. 1 Greenl. Ev. § 398. *Defreeze* v. *Trumper*, 1 Johns. 274. *Dresser* v. *Ainsworth*, 9 Barb. 619. *Huntingdon* v. *Hall*, 36 Maine, 501. But however this may be, here was not only a sale for full value, but the concealment of an important fact from the purchaser, which obliges the vendor to make the title good to the purchaser. Chit. Con. (8th Amer. ed.) 353. *Peto* v. *Blades*, 5 Taunt. 657. *Jones* v. *Bowden*, 4 Taunt. 847. *Emerson* v. *Brigham*, 10 Mass. 197, and authorities cited. The plaintiff, having authorized the sale to the defendant, without giving him notice of the mortgage which the plaintiff knew to exist, is estopped to claim title against him; and the plaintiff's subsequent purchase of the first mortgage enures to the defendant's benefit.

*F. Hilliard*, for the plaintiff.

THOMAS, J. This case lies within a narrow compass. The words and acts of the plaintiff, viewed in the light of his position as mortgagee, cannot be construed to be a warranty of title. They were but a waiver and release of his right and interest under the mortgage which he then held. Such waiver and release could not preclude the acquisition of a new title, nor could they work an estoppel, by force of which the interest newly acquired would enure to the defendant.

We need but the aid of this suggestion to see that the instructions of the presiding judge, and his refusal to instruct, were correct in principle, and well adapted to the facts before him.                    *Exceptions overruled.*